```
                    UNITED STATES DISTRICT COURT
              FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


ANDREW OGADA,                        :    CIVIL NO. 1:10-CV-1079
                                     :
          Petitioner                 :    (Chief Judge Kane)
                                     :
     v.                              :    (Magistrate Judge Smyser)
                                     :
C. LOWE, in his capacity as          :
Warden, Pike County Correctional:
Facility, Lords Valley,              :
Pennsylvania; THOMAS R. DECKER, :
in his official capacity as          :
Philadelphia Field Office            :
Director for Detention and           :
Removal; JOHN T. MORTON, in his :
official capacity as Assistant       :
Secretary of U.S. Immigration        :
and Customs Enforcement;             :
JANET NAPOLITANO, in her             :
official capacity as the             :
Secretary of the U.S. Department:
of Homeland Security; and            :
ERIC HOLDER, in his official         :
capacity as Attorney General of :
the U.S. Department of Justice, :
                                     :
          Respondents                :
```

### **REPORT AND RECOMMENDATION**

This is a habeas corpus petition brought by Andrew Ogada, a prisoner held in United States Immigration and Customs Enforcement (ICE) custody. He is being held at the Pike County Correctional Facility. He filed this petition on May 20, 2010.

He alleges that he has been incarcerated by immigration authorities since October 26, 2009.

The petitioner in his *pro se* petition states that he is a native and a citizen of Kenya. He attended college in Kenya and he received a Bachelor of Science degree in Biological Services from Jomo Kenyatta University in Kenya. He came to the United States at Detroit, Michigan on May 10, 2001 as a non-immigrant on a B1/B2 visa. On 2001 he lost his legal documentation including his birth certificate and passports. While in the United States he got married to a United States citizen, had three children, and took courses at Lehigh Carbon County Community College in clinical medical technology leading to a diploma in nurse registry.

He has worked and paid his tax obligations from 2001 to 2004. In 2004 he was arrested in Allentown, Pennsylvania. That caused ICE proceedings against him to be initiated. Removal proceedings began. He was ordered to depart to Kenya. Because he lacked his legal documentation he could not get travel documents and could not leave. He was released again in

2005 when his release could not be effected, but was again arrested in 2009. He is not challenging his removal order.

He challenges his detention pending removal on the basis that ICE is not able to effect his removal. ICE believes that he is not cooperating with the efforts of the Kenyan embassy to determine that he is a citizen of Kenya.

A response to the petition was filed by respondents on July 8, 2010. The respondents assert that the petitioner has refused to speak with the Kenyan embassy and that he has failed to cooperate in ICE's effort to obtain a travel document. The petitioner filed a reply on July 19, 2010.

By Order of July 23, 2010, counsel was appointed for the petitioner and a hearing on the petition was scheduled.

After a hearing was held on August 13, 2010, the undersigned ordered supplemental briefs. The petitioner filed supplemental briefs (Docs. 29 and 35) on August 20, 2010 and October 29, 2010. The respondents filed supplemental briefs (Docs. 30, 33 and 36) on September 2, 2010, October 12, 2010

3

and October 29, 2010. The petitioner's position is that there is not a significant likelihood of his removal in the reasonably foreseeable future. The position of the respondent is that the petitioner is not cooperating.

8 U.S.C. § 1231(a) governs detention of aliens ordered removed. Pursuant to 8 U.S.C. § 1231(a), generally an alien shall be removed during the ninety day removal period. 8 U.S.C. § 1231(a)(1)(A) provides:

> (A) In general. Except as otherwise provided in this section, when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the "removal period").

8 U.S.C. § 1231(a)(1)(B) provides that the removal period begins on the latest of the following:

> (i) The date the order of removal becomes administratively final.
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

4

8 U.S.C. § 1231 (a)(1)(C) provides:

> The removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal.

8 U.S.C. § 1231(a)(2) concerns detention during the removal period and provides:

> During the removal period, the Attorney General shall detain the alien. Under no circumstance during the removal period shall the Attorney General release an alien who has been found inadmissible under section 212(a)(2) or 212(a)(3)(B) [8 USCS § 1182(a)(2) or (a)(3)(B)] or deportable under section 237(a)(2) or 237(a)(4)(B) [8 USCS § 1227(a)(2) or (a)(4)(B)].

8 U.S.C. § 1231(a)(3) provides that "[I]f the alien does not leave or is not removed within the removal period, the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General." However, 8 U.S.C. § 1231(a)(6) provides that certain aliens, including aliens determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may continue to be detained beyond the removal period.

5

On June 28, 2001, the United States Supreme Court issued its decision in *Zadvydas v. Davis*, 533 U.S. 678 (2001). In *Zadvydas*, in order to avoid reading the statute in a manner that raised serious constitutional concerns, the Court construed the post-removal-period detention statute, 8 U.S.C. § 1231(a)(6), to contain an implicit "reasonable time" limitation. *Id.* at 689. The Court concluded that, once removal is no longer reasonably foreseeable, continued detention is no longer authorized by the statute. *Id.* at 699. The Court read the statute to limit a resident alien's post-removal-period detention to a period reasonably necessary to bring about the alien's removal from the United States. *Id.* at 699. The Court further adopted a presumption that detention for up to six months is reasonable. *Id.* at 701. After that six month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, ICE must respond with evidence sufficient to rebut that showing or release the alien subject to terms of supervision. *Id.* "And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.* The Court cautioned, however, that the six-month

presumption does not mean that every alien not removed must be released after six months. *Id.* "To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* In *Clark v. Martinez,* 543 U.S. 317 (2005), the Supreme Court held that the construction of 8 U.S.C. § 1231(a)(6) and the six-month presumptive detention period adopted in *Zadvydas* applies in cases of inadmissible aliens as well as resident aliens.

The petitioner filed a second supplemental response (Doc. 33) on October 12, 2010. In the second supplemental response, the petitioner's outlook is materially unchanged. In the response of ICE (Doc. 33), the United States sets forth its position that the petitioner is providing materially inconsistent information about his background in Kenya.

The petitioner on October 29, 2010 in a supplement (Doc. 35) states that his parentage and his early upbringing may be the reason for Kenya's reluctance to issue travel documents. Although he had attended college in Kenya, according to his petition, he asserts that he is unable to

respond to questions about his early life in Kenya because he left the country at a relatively early age.

In 2009, the petitioner wrote that he was born in Kenya in 1979. He completed school in Kenya in 2000. He left there and came to the United States in 2001 with a Kenyan passport. *See* Doc. 1, page 44. Given what he sets forth in his petition and in attachments to his petition and the fact that he left Kenya in 2001, as a young adult, it is not ostensibly correct that he left Kenya and came to the United States at such an early age as to be unable to respond to questions about his early life in Kenya.

The respondents have stated in their last response (Doc. 36), filed on October 29, 2010, that a United States grand jury has found probable cause to charge that the petitioner has willfully failed and refused to make a timely application in good faith for a travel and other documents necessary for his deportation from the United States and did connive and take actions to hamper his deportation from the United States, conduct constituting a felony under 8 U.S.C. § 1253(a)(1)(B) and (C).

Because this prosecution of the petitioner involves factual issues that are also involved in this habeas corpus petition, it is recommended that this petition be dismissed pending the resolution of the criminal charge. The dismissal will not work to prevent a subsequent petition if the petitioner's claims remain justiciable.


*/s/ J. Andrew Smyser*
J. Andrew Smyser
Magistrate Judge


Dated: November 16, 2010.